1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                               **DISTRICT OF NEVADA**

10

11   DAVID JOHNSON,                    )          3:11-cv-00487-HDM-VPC
                                       )
12                 Plaintiff,          )
                                       )          ORDER
13   vs.                               )
                                       )
14   STATE OF NEVADA ex rel BOARD OF   )
     PRISON COMMISSIONERS, et al.,     )
15                                     )
                   Defendants.         )
16   _____)

17
          The court has considered the report and recommendation of the
18
     United States Magistrate Judge (#99) filed on July 10, 2013, in which
19
     the magistrate judge recommends that this court enter an order denying
20
     the plaintiff's motion for summary judgment (#60) and granting the
21
     defendants' cross-motion for summary judgment (#66).  The defendants
22
     opposed the plaintiff's motion for summary judgment (#75), and the
23
     plaintiff replied (#96).  The plaintiff also opposed defendants'
24
     cross-motion for summary judgment (#86), and the defendants replied
25
     (#92).  The court has considered the pleadings and memoranda of the
26
     parties and other relevant matters of record and has made a review and
27
     determination in accordance with the requirements of 28 U.S.C. § 636
28

                                        1

and applicable case law, and good cause appearing, the court hereby adopts and accepts in part and declines to adopt in part the report and recommendation of the United States Magistrate Judge (#99).

The court hereby adopts and accepts the magistrate judge's recommendation that summary judgment should be denied to the plaintiff on all Counts.

The court hereby adopts and accepts the magistrate judge's recommendation that summary judgment should be granted to the defendants on the plaintiff's claims in Counts VI-IX that the defendants violated his rights under the Nevada State Constitution, the First Amendment of the United States Constitution, the Fourteenth Amendment of the United States Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in denying his requests to have space reserved at Lovelock Correctional Center for Orthodox Christians to partake in corporate prayer at seven discreet times each day.

The court hereby adopts and accepts the magistrate judge's recommendation that summary judgment should be granted to the defendants on the plaintiff's claims in Counts III and XII that the defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in denying his request for kosher meals.

The court hereby declines to adopt the magistrate judge's recommendation that summary judgment be granted to all defendants with regard to the plaintiff's claims in Counts I, II, IV, X, XI, and XIII that the defendants violated his rights under the Nevada State

2

Constitution, the First Amendment of the United States Constitution, and RLUIPA in denying his requests for kosher meals.

**ANALYSIS:**

**I.   Counts II and XI:   First Amendment Free Exercise**

To succeed on his First Amendment Free Exercise claims in Counts II and XI, plaintiff Johnson must demonstrate (1) that his belief that he must consume a kosher meat diet in order to practice his faith is "sincerely held" and (2) that this belief is "rooted in religious belief" as opposed to "purely secular" concerns. *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981); *see Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008). "[I]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Shakur*, 514 F.3d at 884 (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). The court finds that the plaintiff has proffered evidence in support of these elements sufficient to create genuine issues of material fact for trial.

This evidence includes that (1) plaintiff Johnson submitted a "Faith Group Affiliation Declaration" identifying himself as a member of the Orthodox Christian faith on November 20, 2009 (Defs. Mot. Summ. J. Ex. 36 at 1); (2) plaintiff Johnson filed a "Request for Accommodation of Religious Practices" form (DOC 3505) asking that the Nevada Department of Corrections ("NDOC") Religious Review Team officially recognize his faith group on December 11, 2009 (Defs. Mot. Summ. J. Ex. 36 at 2; Compl. 7-8); (3) plaintiff Johnson filed an Inmate Request Form ("kite") requesting accommodation of dietary restrictions for Lent on January 27, 2010 (Defs. Mot. Summ. J. Ex. 36

3

at 7; Compl. 8); (4) plaintiff Johnson filed five different kites requesting kosher meals to accommodate his Orthodox Christian beliefs from April 15, 2010 to August 9, 2010 (Defs. Mot. Summ. J. Ex. 36 at 28, 29, 32, 33, 54; Compl. 8); (5) plaintiff Johnson filed two separate informal grievances, Grievance 2006-28-99827 and Grievance 2006-29-03717, requesting kosher meals to accommodate his Orthodox Christian beliefs, and exhausted both grievances at all levels, from June 14, 2010 to August 16, 2010 and from August 18, 2010 to November 24, 2010, respectively (Defs. Mot. Summ. J. Ex. 36 at 9, 11-12, 15-16, 34-35, 40-41, 46, 48-49; Compl. 9-11, 25-26) ; and (6) in these forms, kites, and grievances, plaintiff Johnson has articulated, albeit often broadly, various portions of the bible from whence he believes the requirement that Orthodox Christians consume kosher meat derives (*see, e.g.,* Defs. Mot. Summ. J. Ex. 36 at 2, 18, 32, 33, 48), attached handwritten charts explaining his Orthodox Christian beliefs (Defs. Mot. Summ. J. Ex. 36 at 5), attached literature attempting to corroborate his beliefs (Defs. Mot. Summ. J. Ex. 36 at 3-4, 6, 53), and explained in some detail why his beliefs forbid him from converting to Judaism, even though doing so would mean he might be eligible to receive a kosher diet (Defs. Mot. Summ. J. Ex. 36 at 19-21).

The court also recognizes that the defendants have produced evidence that plaintiff Johnson's beliefs are not sincerely held or rooted in religious belief. This evidence includes that: (1) plaintiff Johnson has articulated sections of the bible that he believes command him as an Orthodox Christian to eat kosher meat, but has not articulated exactly how these sections are satisfied by

4

consuming kosher meat as opposed to non-kosher meat (Defs. Mot. Summ. J. Ex. 1 at 12-16, 25-29); plaintiff Johnson has been unable to point to any source that directly corroborates a belief that kosher meat certifications comport with Orthodox Christian Dietary requirements (*id.* at 29-30); while plaintiff Johnson claims that he now purchases some of his meals and gives the non-kosher meat he is served to other inmates in exchange for fruits and vegetables (Pl. Reply 21), he requested to be removed from the alternative meatless diet and to be placed back on the mainline-menu diet, which contains non-kosher meat products, on October 14, 2012 and has remained on the mainline diet since that date (Defs. Opp'n Ex. 2 at 4-5).

However, the role of the court when deciding a motion for summary judgment is not to "weigh the evidence or determine the truth of the matters asserted" but only to "determine whether there is a genuine issue for trial." *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 2000). "[V]iew[ing] the evidence in the light most favorable to the nonmoving party," as this court is required to do in reviewing motions for summary judgment, the court finds that the questions of whether plaintiff Johnson's beliefs are "sincerely held" and whether they are "rooted in religious belief" are questions that must ultimately be resolved by the trier of fact. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 574 (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)).

Additionally, the court finds that there are triable issues of fact as to whether the defendants' actions in the case at hand are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 79, 89. Even if "a prison regulation [is found to]

5

impinge[s] on an inmate's constitutional rights, the regulation is [nonetheless] valid if it is reasonably related to legitimate penological interests," and the trier of fact must balance four factors set forth in *Turner* in making this determination. *Shakur*, 514 F.3d at 884 (quoting *Turner*, 482 U.S. at 89). These factors are: "(1) [w]hether there is a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; (2) [w]hether there are 'alternative means of exercising the right that remain open to prison inmates'; (3) whether 'accommodation of the asserted constitutional right' will 'impact . . . guards and other inmates, and . . . the allocation of prison resources generally'; and (4) [w]hether there is an 'absence of ready alternatives' versus the 'existence of obvious, easy alternatives'" (*Shakur*, 514 F.3d at 884 (quoting *Turner*, 482 U.S. at 89-90)) "that would accommodate [the inmate] at de minimis cost to the prison" (*Shakur*, 514 F. 3d at 887 (quoting *Ward v. Walsh*, 1 F.3d 873, 879)).

In *Shakur,* which had similar facts to the case at hand (a Muslim inmate requested kosher meals because he believed his faith required him to consume only kosher meat), the Ninth Circuit held that there were triable issues of material fact as to the third and fourth *Turner* factors. *Shakur*, 514 F.3d at 886-889. With regard to the third *Turner* factor, the court found that there were genuine issues of material fact because the correctional agency, while providing information about the high cost of kosher meals, had provided no evidence that it had looked into the cost of providing kosher meat (as opposed to an entirely kosher diet) to Muslim prisoners, and also had not produced any evidence that other Muslim prisoners would demand

kosher meals if plaintiff Shakur's request were granted. *Shakur*, 514 F.3d at 887; *see also Turner*, 482 U.S. at 90.  With regard to the fourth *Turner* factor, the court found that there were triable issues of fact because the correctional agency had not provided sufficient evidence that ordering kosher meat (without ordering full kosher meals) would be costly. *Id.* at 887-88.  Additionally, the court noted that "the fact that the [correctional agency] already provides Jewish inmates with kosher meals that cost $5 more per day more than the standard meal, and orthodox kosher meals that cost three to five times more, 'casts substantial doubt on [its] assertion that accommodating Shakur's request would result in significant problems for the prison community.'"  *Id.* at 887 (quoting *Dehart v. Horn*, 227 F.3d 47, 58; citing *Ashelman v. Wawrzaszek*, 11 F.3d 674, 678 (9th Cir. 1997).

The defendants in the case at hand have similarly not shown that they have investigated the cost of providing plaintiff Johnson with kosher meat (as opposed to fully kosher meals), have not shown that providing plaintiff Johnson or any other Orthodox Christian inmates with kosher meals would cause any more disruption than is already caused by other religious dietary accommodations already in effect, and have not shown that other Orthodox Christian inmates would even request kosher meals if plaintiff Johnson's request is accommodated. Furthermore, there were 850 Muslim prisoners who might have requested accommodation in the *Shakur* case if plaintiff Shakur's request for kosher meals was granted (*Shakur*, 514 F.3d at 887), while the evidence in the case at hand indicates that there are only three or four Orthodox Christian inmates incarcerated at the Lovelock Correctional Center.  Accordingly, the court finds that there are triable issues

7

of fact as to whether or not *Johnson* defendants' actions in denying plaintiff Johnson a kosher meat diet are "reasonably related to a legitimate penological interest." *Turner*, 482 U.S. at 89.

## II.   Counts I and X:   Nevada State Constitution Free Exercise

As the magistrate judge properly held, Article 1, Section 4 of the Nevada State Constitution is considered co-extensive with the Free Exercise Clause of the First Amendment of the United States Constitution.  *See Martinez v. Clark Cnty., Nev.*, 846 F. Supp. 2d 1131, 1145 (D.Nev. 2012); Rep. & Rec. 2 n.1.  Thus, this court analyzes the plaintiff's religious rights claims under the free exercise clauses of the Nevada State Constitution and the United States Constitution using the same standard.  As the court has concluded that there is a genuine issue of material fact as to the plaintiff's First Amendment Free Exercise claims in Counts II and XI, there is likewise a genuine issue of material fact as to the plaintiff's Nevada State Constitution Free Exercise claims in Count I and X.

## III.   Counts IV and XIII:   RLUIPA

RLUIPA is generally considered to provide greater protection to religious exercise than the First Amendment.  *See, e.g.*, *Green v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008).  RLUIPA jurisprudence is distinguished from traditional First Amendment jurisprudence in that RLUIPA "expanded the reach of protection to include any 'religious exercise,' including 'any exercise of religion, whether or not compelled by or central to a system of religious belief."  *Id.* (citing *Cutter v. Wilkinson,* 544 U.S. 709, 715 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A))).  In order to succeed on a

8

RLUIPA claim, a plaintiff must show that the government "imposed a substantial burden on religious exercise."  42 U.S.C. § 2000cc-1(a). Additionally, "as opposed to the deferential rational basis standard of *Turner v. Safley*, 472 U.S. 78, 89-90 . . . RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is "'in the furtherance of a compelling governmental interests; and is the least restrictive means of furthering that compelling governmental interest.'" *Greene*, 513 F.3d 982 at 986 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).  Similar to First Amendment jurisprudence, RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . [but] does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter*, 544 U.S. at 725 n.13.

Under RLUIPA's more generous definition of "religious exercise," and making the same inquiry into sincerity of religious belief used in evaluating the First Amendment Free Exercise claims, keeping kosher could be construed as "religious exercise," given the facts and evidence in the record in the case at hand, but the determination is a factual one.  Similarly, whether the defendants' actions constitute a "substantial burden" depends on how great the restriction or onus upon the plaintiff's religious exercise actually is, which is also a factual determination. *See Warsoldier v. Woodford*, 418 F.3d 989, 995; *Shakur*, 514 F.3d at 888-89.

Additionally, given that RLUIPA's compelling interest test imposes a much heavier burden on the defendants than the First Amendment's *Turner* factors (*Greene*, 513 F.3d 982 at 986), and the court has already determined that there are triable issues of fact as

9

to whether the defendants have met their burden under the *Turner* factors (*see supra* pp. 5-8), the court concludes that there are also genuine issues of material fact as to whether the defendants have met their burden under RLUIPA's compelling interest test.

## IV.   Counts III and XII:   Fourteenth Amendment Equal Protection

The court agrees with the magistrate judge that the "[p]laintiff has failed to proffer any evidence showing that defendants intentionally discriminated against him based on either his race or his religion." (Rep. & Rec. 34).  Plaintiff Johnson has not presented any evidence that he was or is being singled out for negative treatment because of his status as an Orthodox Christian or because of his race *per se*.   The court therefore finds that there is no genuine issue of material fact with regard to the plaintiff's Fourteenth Amendment claims in Counts III and XII.

## V.   Counts V and XIV:   Nevada State Constitution, Art, 15, Sec. 2

Finally, the court also hereby grants summary judgment to the defendants on the plaintiff's claims in Counts V and XIV that the defendants violated the plaintiff's rights by failing to uphold their official oaths taken pursuant to Article 15, Section 2 of the Nevada State Constitution and NRS 282.020.  There is no triable issue of fact with regard to these claims, as the plaintiff has failed to allege a cognizable cause of action.

## VI.   Personal Involvement

Given the court's findings that there are genuine issues of material fact with regard to Counts I, II, IV, X, XII, and XIII, the

court must now address the defendants' personal involvement and qualified immunity defenses.[1]   (*See* Defs. Mot. Summ. J. 18-21, 30).

"Liability under § 1983 must be based on the personal involvement of the defendant."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).   Additionally, "[t]here is no respondeat superior liability under section 1983."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The plaintiff alleges and evidence in the record supports that defendants Helling, LeGrand, and Harkreader were personally involved in the violations alleged in Counts I, II, IV, X, XII, and XIII. These three defendants denied plaintiff Johnson's grievances over a period of many months and at multiple grievance levels, allegedly violating the plaintiff's religious rights.  *See* Compl. 6, 9, 11, 25-26; Defs. Mot. Summ. J. Ex. 36 at 9, 12, 16, 35, 41, 46).   In contrast, defendant Carpenter is not even named in Counts I, II, IV, X, XII, and XIII (*see* Compl. 7-15, 24-29), and defendants Sandoval, Miller, Cortez-Masto, Cox, Gibbons, and Skolnik are only named inasmuch as plaintiff Johnson alleges they had "notice" of the alleged violations (often because Plaintiff Johnson sent them letters), and yet they failed to correct alleged violations (*see* Compl. 7, 11, 24, 26; Pl. Mot. Summ. J. Ex. 9-20).   However, "knowledge and acquiescence" of subordinates' conduct is not enough to hold officials liable under section 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677. "Absent vicarious liability, each Government official . . . is only liable for his or her own misconduct."  *Id*.  Plaintiff Johnson has not

---

[1]  Because the Magistrate Judge recommended that summary judgment be granted in the defendant's favor on all claims on other grounds, she did not address these defenses.  (Rep. & Rec. 35 n.15).

alleged evidence sufficient to show the personal involvement of defendants Carpenter, Sandoval, Miller, Cortez-Masto, Cox, Gibbons, and Skolnik in Counts I, II, IV, X, XII, and XIII.

Accordingly, defendants Sandoval, Miller, Cortez-Masto, Carpenter, Gibbons, and Skolnik are dismissed from this lawsuit. As a matter of law, they cannot be held liable on the remaining section 1983 claims because they were not personally involved in the alleged violations.

Defendant Cox is dismissed from this lawsuit in his individual capacity due to lack of personal involvement, but is not dismissed from this action in his official capacity because the plaintiff has requested injunctive relief. Defendant Cox is the current Director of the NDOC and as such would be responsible for implementing any injunction issued by the court.

**VII: Qualified Immunity**

The defendants also allege that all defendants are entitled to qualified immunity. Governmental officials who are performing discretionary functions can be entitled to qualified immunity, which shields them from civil damages liability but does not provide immunity from suit for declaratory or injunctive relief. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993). Officials are entitled to qualified immunity when a two-part analysis is satisfied. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, the court must determine whether the facts "[t]aken in the light most favorable to the party asserting the injury" show that the defendant(s) violated a constitutional right. *Id*. Second, the court

must determine "whether the [violated] right was clearly established" "in a particularized sense" at the time of the alleged violation." *Id.* at 201-02; *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. If a defendant makes a "mistake as to what the law requires" but his or her mistake is "reasonable," "the [defendant] is entitled to the immunity defense." *Id.* at 205; *see also Kennedy v. Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).

The two prongs do not need to be satisfied in any particular order; "courts may exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*; 555 U.S. 223, 236 (2009). Furthermore, whether the defendant violated a constitutional right and whether that right was clearly established at the time of the violation are pure questions of law for the court. *See Serrano v. Francis*, 345 F.3d 1071, 1080 (9th Cir. 2003).

In the case at hand, there was no clearly established right that the defendants were required to provide plaintiff Johnson with kosher meals or kosher meat. The right of Conservative and Orthodox Jewish inmates to receive kosher meals as a religious accommodation is certainly clearly established. *See, e.g.*, Ashelman v. Wawrzaszek, 111 F.3d 674, 675, 677-78 (9th Cir. 1997); *see also Resnick v. Adams*, 348 F.3d 763, 765, 769 (9th Cir. 2003). However, plaintiff Johnson identifies himself a member of the Orthodox Christian faith. The

13

Ninth Circuit case *Shakur* held that there were genuine issues of material fact as to whether the plaintiff, a Muslim inmate, was entitled to receive a kosher diet under the First Amendment and under RLUIPA.   514 F.3d at 885-891.   However, a holding that there is a genuine issue of material fact for trial when a Muslim inmate requests kosher meals as a religious accommodation is not the same as a holding that all similarly situated inmates who identify themselves as members of faiths other than Judaism, or even that all similarly situated Muslim inmates, have a "clearly established right" to kosher meals.

Additionally, while a court need not identify an identical prior action in order to determine that a right is clearly established (see *Anderson*, 483 U.S. at 640), case law that clearly establishes a right consists of "facts not distinguishable in a fair way from facts presented in the case at hand." *Saucier*, 533 U.S. at 202.   The facts in *Shakur* can be distinguished in a fair way from the facts in the case at hand.   Most importantly, plaintiff Shakur complained of gastrointestinal maladies from which he suffered as a result from being on the vegetarian diet at the prison, and alleged that these resulting health issues substantially burdened his religious practice. *Shakur* 514 F.3d at 882, 885.   Plaintiff Johnson has alleged no health problems a result of the diet the prison provides him.   Of course, plaintiff Shakur also identified as Muslim, while plaintiff Johnson identifies as Orthodox Christian.   (*Id.* at 881; Compl. at 5).

More recently, in an unpublished opinion that therefore has only persuasive rather than authoritative or precedential value,[2] the Ninth

---

[2] Ninth Circuit Rule 36-3(a) provides that "[u]npublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.   Ninth Circuit Rule 36-3(b) states that "[u]npublished dispositions and orders of this Court issued on or after January 1, 2007 may

Circuit held that in circumstances in which a Muslim prisoner requested kosher meat or kosher meals as a religious accommodation, the defendants were "entitled to qualified immunity because it was not clearly-established at the time of the violation that the defendants were required to provide him with either Halal or Kosher meals with meat in lieu of an ovo-lacto [vegetarian] diet." *Thompson v. Williams*, 320 F. App'x 678, 679 (9th Cir. 2009). The defendants in the case at hand did offer plaintiff Johnson an "alternative meatless diet," a vegetarian diet that the plaintiff took advantage of for a period time before requesting to be placed back on the mainline diet on October 14, 2012. (Defs. Mot. Summ. J. Ex. 1 at 48; Defs. Opp'n Ex. 2 at 4-5; Pl. Reply 21).

Absent binding precedent, the court may also look to precedent from other circuits. *Dunn v. Castro*, 621 F.3d 1196, 1203 (9th Cir. 2010). Decisions from other circuits also strongly suggest that the right at issue is not clearly established. *See, e.g., Martinelli v. Duggar*, 817 F.2d 1499 (11th Cir. 1987) (holding that the prison's legitimate penological interest outweighed the Orthodox Christian inmate plaintiff's sincerely held religious belief that he should only consume kosher meat); *Guzzi v. Thompson*, 470 F. Supp.2d 28, 29-30 (D.Mass. 2007) (granting summary judgment to defendants where the Orthodox Catholic inmate plaintiff requested a kosher diet as a religious accommodation and claimed the defendants' denial violated RLUIPA).

The relevant case law and precedent, even when "[t]aken in the light most favorable to the party asserting the injury," indicates

---

be cited to the courts of this circuit . . . "

1
2
3
4
5
6
7
8
9
10
that there is no clearly-established right that the *Johnson* defendants had to provide an Orthodox Christian inmate, such as plaintiff Johnson, with kosher meat or kosher meals in lieu of the alternative meatless diet with which they did provide him. *Saucier*, 533 U.S. 201-202.  This court cannot conclude that "it would be clear to a reasonable officer that [the defendants'] conduct was unlawful in the situation he confronted."  *Id.* at 202. The court therefore finds that all of the *Johnson* defendants are entitled to qualified immunity with regard to all Counts of the plaintiff's complaint.

11
12
13
14
15
16
17
18
Accordingly, defendants Helling, LeGrand, and Harkreader, neither of whom are dismissed from this lawsuit on the basis of lack of personal involvement, are all dismissed from this lawsuit on the basis of qualified immunity.  However, because qualified immunity does not provide immunity from suit for injunctive relief, defendant Cox shall not be dismissed in his official capacity on the plaintiff's remaining claims for injunctive relief. *See, e.g.*, *Anderson*, 483 U.S. at 638.

19
20
21
22
23
24
In summary, this order dismisses all of the plaintiff's claims for both legal (damages) and equitable (injunctive) relief against all defendants except defendant Cox, who remains a defendant only in his official capacity for the purposes of potential injunctive relief related to the plaintiff's claims regarding kosher meals in Counts I, II, IV, X, XI, and XII.

25
**CONCLUSION:**

26
27
28
In accordance with the foregoing, the plaintiff's motion for summary judgment (#60) is hereby **DENIED**, and the defendants' cross-

motion for summary judgment (#66) is hereby **GRANTED IN PART AND DENIED IN PART** as follows:

(1) summary judgment is **GRANTED** to all defendants with regard to the plaintiff's claims in Counts VI-IX that the defendants' denial of the plaintiff's requests for corporate prayer violated his rights under the Nevada State Constitution, the First Amendment of the United States Constitution, the Fourteenth Amendment of the United States Constitution, and RLUIPA;

(2) summary judgment is **GRANTED** to all defendants with regard to the plaintiff's claims in Counts III and XII that the defendants' denial of the plaintiff's requests for kosher meals violated his rights under the Fourteenth Amendment of the United States Constitution;

(3) summary judgment is **GRANTED** to defendants Sandoval, Miller, Cortez-Masto, Carpenter, Gibbons, Skolnik, Helling, LeGrand, and Carpenter, in both their individual and official capacities, with regard to the plaintiff's claims in Counts I, II, IV, X, XII, and XIII that the defendants' denial of the plaintiff's requests for kosher meals violated his rights under the Nevada State Constitution, the First Amendment of the United States Constitution, and RLUIPA;

(4) summary judgment is **GRANTED** to defendant Cox in his individual capacity with regard to the plaintiff's claims in Counts I, II, IV, X, XII, and XIII that the defendants' denial of the plaintiff's requests for kosher meals violated his rights under the Nevada State Constitution, the First Amendment of the United States Constitution, and RLUIPA;

   (5) summary judgment is **GRANTED** to all defendants, in both their individual and official capacities, with regard to the claims concerning the defendants' alleged abrogation of their official oaths in Counts V and XIV.

   (6) summary judgment is **DENIED** to defendant Cox in his official capacity only with respect to the plaintiff's claims for injunctive relief related to his claims in Counts I, II, IV, X, XII, and XIII that the defendants' denial of the plaintiff's requests for kosher meals violated his rights under the Nevada State Constitution, the First Amendment of the United States Constitution, and RLUIPA;

  **IT IS SO ORDERED.**

  DATED: This 26th day of September, 2013.

_____

UNITED STATES DISTRICT JUDGE

18